## STATE EX REL. RENE RIENDEAU v. RALPH H. TAHASH.

148 N. W. (2d) 557.

February 3, 1967—No. 40,195.

*Edward E. Dessert,* for appellant.

*Robert W. Mattson,* Attorney General, *Gerard W. Snell,* Solicitor General, and *David C. Weinberg,* Special Assistant Attorney General, for respondent, warden of State Prison.

OTIS, JUSTICE.

Relator appeals from an order of the district court denying without a hearing his petition for a writ of habeas corpus wherein he seeks review of his conviction for grand larceny arising out of the theft of four head of cattle. Because in our opinion the sequence of events from the time of relator's arrest until his conviction denied him rights we believe to be substantial, we deem it appropriate to set forth the chronology of the proceedings.

The offense with which relator was charged occurred in Clearwater County on April 23, 1963, and resulted in his arrest without a warrant. on June 15, 1963, pursuant to Minn. St. 629.34(3). On June 20 relator was arraigned in the criminal division of the probate court where he asked for a preliminary hearing and the appointment of counsel. The matter was continued until June 27, at which time the court advised relator that he was not eligible for court-appointed counsel because he was not legally indigent. A further continuance until July 9 was granted. On that date relator again stated he was unable to secure representation. Nevertheless, the court proceeded with the preliminary examination. Relator did not take the stand on his own behalf. He was bound over to the district court without bail because the probate court was of the opinion that it had no authority to fix bail. Thereafter, for reasons which do not appear in the record, relator was confined in jail for 3 months without an appearance in the district court and without an opportunity to have bail set or to engage counsel.[1] Finally, under the authority of § 631.18 and 611.026, on October 9, upon the motion of the county attorney, the district court ordered relator examined by the probate court to determine whether he was mentally competent to stand trial.[2] As a result of

---

[1] Defendant should have been promptly arraigned in the district court whether it was in or out of term. State v. Hartman, 272 Minn. 58, 61, 136 N. W. (2d) 543, 545.

[2] It is clear that the court has a duty to order such an examination where there is any question as to the ability of the accused to defend himself. Pate v. Robinson, 383 U. S. 375, 378, 385, 86 S. Ct. 836, 838, 842, 15 L. ed. (2d) 815, 818, 822. See, Annotation, 32 A. L. R. (2d) 434. However, the probate court had no jurisdiction to adjudicate the issue except as jurisdiction was

that hearing he was sent to the State Hospital at Fergus Falls until November 5, 1963, when he again appeared before the district court. For the first time he was represented by counsel and had bail fixed in the sum of $500, which he posted on November 12. On December 9, relator pled not guilty to the charge of grand larceny. He was tried and convicted on January 13 and 14, 1964. The record again is silent as to the reasons for the long delay in securing a transcript necessary for the court's ruling on relator's motion for a new trial, as a result of which delay it was not until July 6, 1964, that the motion was denied. Relator was then sentenced to 5 years' imprisonment but execution was suspended, and relator was placed on probation. On May 20, 1965, the probation was summarily revoked upon relator's conviction for simple assault following a trial on a charge of rape.[3]

Relator seeks his discharge on the grounds he was denied the "fundamental fairness" to which he was entitled under the Constitution. Lisenba v. California, 314 U. S. 219, 236, 62 S. Ct. 280, 290, 86 L. ed. 166, 180, rehearing denied, 315 U. S. 826, 62 S. Ct. 620, 86 L. ed. 1222. While we do not agree that a discharge is his only remedy, we do concur in the claim that the procedures described and errors which occurred at the trial are of sufficient gravity to warrant review by habeas corpus and compel a new trial.[4] We recognize that prearraignment irregularities

relinquished by the district court. State v. Hagerty, 152 Minn. 502, 504, 189 N. W. 411, 412.

[3] The only reason disclosed in the record for the revocation was stated by the trial court as follows:

"The court has sat during the trial of this case and heard you unashamedly admit that you bought drinks for the road while driving an automobile and that you consumed liquor in the automobile while driving from Moose Lake to Grand Rapids; that you purchased more liquor in frequented places where liquor was sold in Deer River. Therefore, it is absolutely unnecessary for the court to have any further hearing in this matter because all of this has been stated under oath by yourself."

[4] State ex rel. Christopherson v. Tahash, 261 Minn. 233, 237, 111 N. W. (2d) 404, 406; State ex rel. Bassett v. Tahash, 263 Minn. 447, 116 N. W. (2d) 564; State ex rel. Shannon v. Tahash, 265 Minn. 66, 69, 121 N. W. (2d) 59, 61, certiorari denied, 375 U. S. 850, 84 S. Ct. 107, 11 L. ed. (2d) 77; State ex rel. Masters v. Tahash, 266 Minn. 348, 351, 123 N. W.

which can be corrected by a timely motion must be brought to the attention of the trial court or they are deemed waived,[5] and we allude to these matters primarily to prevent their recurrence.

■ From the moment of his arrest relator vigorously and persistently requested the appointment of counsel. Because he had $25 in cash, a 7-year-old automobile, and some equity in 120 acres of land, the probate court held that he was not indigent. We think on this record the court was in error, more particularly when relator reported to the court that he had attempted to retain an attorney but was unable to make satisfactory arrangements with him. In this connection the United States Supreme Court in Hardy v. United States, 375 U. S. 277, 289, 84 S. Ct. 424, 431, 11 L. ed. (2d) 331, 340, note 7, motion for modification denied, 376 U. S. 936, 84 S. Ct. 790, 11 L. ed. (2d) 657, has made the following observation:

"Indigence 'must be conceived as a relative concept. An impoverished accused is not necessarily one totally devoid of means.' Attorney General's Report, at 8. An accused must be deemed indigent when 'at any stage of the proceedings [his] lack of means . . . substantially inhibits or prevents the proper assertion of a [particular] right or a claim of right.' Ibid. Indigence must be defined with reference to the particular right asserted. Thus, the fact that a defendant may be able to muster enough resources, of his own or of a friend or relative, to obtain bail does not in itself establish his nonindigence for the purpose of purchasing a complete trial transcript or retaining a lawyer."

Ultimately the district court did determine relator was indigent, but we agree that in the meantime his failure to have representation undoubtedly prejudiced the preparation of his defense.[6]

---

(2d) 600, 602; State ex rel. Dinneen v. Tahash, 272 Minn. 7, 13, 136 N. W. (2d) 847, 851; State ex rel. Holm v. Tahash, 272 Minn. 466, 469, 139 N. W. (2d) 161, 163.

[5] State ex rel. Hansen v. Utecht, 230 Minn. 579, 40 N. W. (2d) 441; State ex rel. Welper v. Rigg, 254 Minn. 10, 93 N. W. (2d) 198; State ex rel. Farrington v. Rigg, 259 Minn. 483, 485, 107 N. W. (2d) 841, 842.

[6] As to the right to counsel at a preliminary hearing, see State v. Osgood, 266 Minn. 315, 123 N. W. (2d) 593; Pointer v. Texas, 380 U. S. 400, 85

30

■ Clearly the probate court was in error in failing to fix bail. Had this been done, relator might well have been in a position to conduct his own investigation as well as petition the district court for the appointment of counsel and avoid needless confinement pending his ultimate arraignment. Although the language of our statutes is somewhat confusing, one of the stated purposes of the preliminary hearing is to have bail fixed. State ex rel. Hastings v. Bailey, 263 Minn. 261, 266, 116 N. W. (2d) 548, 551. Under § 629.44 it appears that a magistrate may not set a bond in felony cases "without trial or examination." However, by the terms of § 629.52, *after* a preliminary hearing any judge or magistrate may fix bail regardless of the gravity of the charge and the only restrictions are on justices of the peace.

■ While the irregularities to which we have referred are probably not in themselves sufficiently prejudicial to warrant a new trial, and indeed could not be corrected in that manner, we are of the opinion that errors at the trial require a reversal.

In conducting the cross-examination of relator, the prosecutor asked the following questions:

"Q. You had a conversation with Sheriff Brustad where he asked you where you got those cattle, didn't you?

"A. Well, he wanted to find out.

"Q. And you wouldn't tell him where you got those cattle, would you?

"A. No, not if he was going to accuse me.

"Q. You didn't make any effort at all to tell him where you had got those cattle, did you?

"A. No, sir.

"Q. From the time that you were picked up until today when you came into court, you didn't tell the sheriff or anyone in connection with the State of Minnesota where you got those cattle, is that right?

"Mr. Severson [defendant's attorney]: We object to the question as being argumentative, improper cross examination.

S. Ct. 1065, 13 L. ed. (2d) 923; Minn. St. 629.50 and 611.07; Annotation, 5 A. L. R. (3d) 1269, 1314.

"THE COURT: Objection sustained.

"Q. [prosecutor continuing] Now when you were in Probate Court at the preliminary examination, you didn't tell that court where you got the cattle, did you?

"MR. SEVERSON: Objected to as improper cross examination.

"THE COURT: Counsel, will you approach the bench."

Thereupon relator moved for a mistrial on the ground that prosecutor's question violated defendant's right against self-incrimination. In response the court, outside the hearing of the jury, made the following observations:

"The Court is very much in doubt as to whether anything the Court can say to the jury can cure what counsel has just done. In this country a man does not have to give testimony against himself or incriminate himself in any manner and the fact he refuses to answer cannot be used in court against him.

\* \* \* \* \*

"\* \* \* Counsel should not have persisted the second time in asking that question about the preliminary hearing.

\* \* \* \* \*

"I do not feel that it is necessary for counsel for the state to adopt any tactics of that type and I do not believe that it was done intentionally or deliberately *or at least I did not feel so until you asked the second question about the preliminary hearing.*" (Italics supplied.)

The motion for mistrial was denied without prejudice to later renewing it.

Even before the decision in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, we indicated that acquiescence in an accusation may not be inferred if it occurs at a time when the defendant is under arrest. State v. Brown, 209 Minn. 478, 482, 296 N. W. 582, 585; State v. Gulbrandsen, 238 Minn. 508, 514, 57 N. W. (2d) 419, 423; 2 Wharton, Criminal Evidence (12 ed.) § 410, and 1966 Cumulative Supp. § 410, note 13.5. Relator was under no duty to respond to the sheriff after he had been charged with the offense and was without an attorney. Although his counsel did not promptly object to this line of examination, the final question asked by the prosecutor, to which relator

did make timely objection, was designed to show that he failed to testify at the preliminary examination. This was a flagrant violation of his right against self-incrimination under both Minn. Const. art. 1, § 7, and Minn. St. 611.11. The latter reads as follows:

"The defendant in the trial of an indictment, complaint, or other criminal proceeding shall, at his own request and not otherwise, be allowed to testify; but his failure to testify shall not create any presumption against him, nor shall it be alluded to by the prosecuting attorney or by the court."

At the conclusion of the trial relator renewed his motion for a mistrial. It was denied.

The court in its charge advised the jury that relator was under no obligation to testify at the preliminary hearing and that failure to do so should not be held against him. However, we share the doubts expressed by the court that any corrective instruction could effectively expunge from the jurors' minds the fact defendant failed at his earliest opportunity to offer an explanation for acquiring possession of the stolen cattle. We think that under the circumstances it was the court's duty to resolve that uncertainty in defendant's favor by granting a mistrial.

■ In his charge to the jury, the court gave the following rule with respect to unexplained possession of stolen property:

"The general rule is that the unexplained possession of stolen property is *presumptive* evidence that the person so in possession stole the same or if a defendant's explanation of his possession of recently stolen property is such that taken in connection with all the other evidence in the case, a reasonable doubt as to his guilt remains, he should be found not guilty." (Italics supplied.)

Relator excepted to the charge on the ground that the court used the word "presumptive" evidence. The court acknowledged the error and reinstructed the jury in the following language:

"Ladies and Gentlemen of the Jury, my attention has been directed to an inadvertent statement made by the Court and I hereby instruct you that you should entirely disregard this sentence which was given you with reference to possession of stolen property, the balance of the instruction

remains. And this is the deleted portion thereof: 'The general rule is that unexplained possession of stolen property is presumptive evidence that the person so in possession stole the same.' You are directed to disregard that one sentence. That is all."

The difficulty in finding that the corrective instructions were adequate to neutralize the effect of both the prosecutor's and the court's errors is the fact that in its supplementary instructions the court was obliged to reemphasize by repetition the prejudicial matter previously presented. In explaining to the jury relator's right to remain silent, the court simply underscored the fact that relator had not chosen to testify in his own behalf at the preliminary hearing. By the same token, in renewing its instruction on the unexplained possession of stolen property, the court felt obliged to restate the rule and then direct that it be disregarded.[7] Although relator testified at the trial and attempted to show the cattle were obtained through a legitimate transaction, the jury obviously did not accept his explanation. Nevertheless, however difficult it may be to assess the impact of the prosecutor's improper question and the court's repeated instructions, we cannot say as a matter of law they did not result in prejudice.

The evidence against the defendant is strong, and we are reluctant to reverse where it is so likely the outcome of the next trial will be the same. However, "[i]f prosecutors * * * persist in trying to inject into a trial indirectly matters which they know they cannot introduce directly the only solution is to let them try the case over." State v. Gegen, 275 Minn. 568, 569, 147 N. W. (2d) 925, 926.

Reversed.

---

[7] In the light of Griffin v. California, 380 U. S. 609, 611, 85 S. Ct. 1229, 1231, 14 L. ed. (2d) 106, 108, rehearing denied, 381 U. S. 957, 85 S. Ct. 1797, 14 L. ed. (2d) 730, we seriously question the propriety of charging the jury with respect to the unexplained possession of stolen property as enunciated in State v. Richman, 143 Minn. 314, 173 N. W. 718, and State v. Jatal, 152 Minn. 262, 264, 188 N. W. 284. See, also, State v. Edwards, 269 Minn. 343, 348, 130 N. W. (2d) 623, 626; State v. McCarthy, 259 Minn. 24, 29, 104 N. W. (2d) 673, 677, 87 A. L. R. (2d) 360, 366; State ex rel. Geiselhart v. Tahash, 274 Minn. 464, 144 N. W. (2d) 354. See, however, Annotation, 162 A. L. R. 492, 531.