STATE of Iowa, Appellee,

v.

Fred Andrew JOHNSON, Appellant.

No. 56653.

Supreme Court of Iowa.

June 26, 1974.

Rehearing Denied July 29, 1974.

C. A. Frerichs, Fulton, Frerichs, Nutting & Kennedy, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., David E. Linquist, Asst. Atty. Gen., Des Moines, and David J. Dutton, County Atty., Waterloo, for appellee.

Heard by MOORE, C. J., and MASON, REES, REYNOLDSON and McCOR-MICK, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of possession of heroin with intent to deliver in violation of section 204.401(1)(a), The Code. He was tried to a jury and convicted and now appeals. We affirm.

The State's case was made substantially from the testimony of one Roosevelt Nabors, a convicted felon, who was acting as an undercover agent for the Waterloo police department and the State Department of Public Safety. His services as an undercover agent had been secured by Special Agent Jerry L. Johnson of the Narcotics Division of the State Department of Public Safety, and Detective Sgt. Harry Helgesen of the Narcotics' Division of the Waterloo Police Department. Nabors testified to an alleged transaction involving the purchase and sale of heroin in the Super Chef Lounge in Waterloo about nine o'clock, p. m. on June 9, 1972.

In the early evening of June 9, 1972 Nabors met with Agent Johnson and Sgt. Helgesen in a parking area. The officers completely searched Nabors for money and drugs, and then gave him two twenty-dollar bills, the serial numbers of which had been noted by the officers. The two officers then kept Nabors under surveillance as he proceeded to the Super Chef Lounge on Waterloo's north side. The officers testified that when Nabors was in the Super Chef Lounge they observed the automobile of defendant parked outside. The two officers did not purport to testify that they observed the alleged sale of heroin by Johnson to one Glenn "Bubba" Phillips, nor did they purport to say that they saw the heroin delivered to Nabors by Phillips.

Nabors further testified he had been in the Super Chef earlier in the day and that he had there seen Phillips smoking marijuana. Defendant's counsel objected to such statement and moved for a mistrial immediately on the grounds that such testimony was in violation of a pretrial order on a motion in limine concerning statements by Phillips, but the objection was overruled. During the afternoon Nabors had interrogated Phillips as to how he could secure drugs and was told by Phillips he could arrange the purchase of drugs for him. When he entered the Super Chef during the evening hours, and after his rendezvous with the police officers, Nabors handed the two twenty-dollar bills to Phillips who then approached defendant who gave to Phillips three pills out of a small bottle which he removed from his pocket, took the two twenty-dollar bills and gave a ten-dollar bill back to Phillips. Phillips and Nabors then went to the restroom in the Super Chef where Nabors received from Phillips the ten-dollar bill which Phillips had received in change, and two of the pills, Phillips keeping one for himself, consistent with arrangements previously agreed to between them. Phillips instructed Nabors to roll the two pills in toilet tissue so that police officers could not find them. Nabors testified he and Phillips then left the Super Chef and walked to the Keg Tavern, and then after a short interval left the Keg Tavern and walked down Walnut Street where they separated. Nabors then went to the pre-arranged meeting

place and met with Agent Johnson and Detective Helgesen where he was again searched and the two pills in his possession were turned over to Special Agent Johnson.

Although the alleged sale of heroin by defendant occurred on June 9, 1972, the defendant was not taken into custody until October 11, 1972. The delay, or interval between the alleged commission of the offense and the arrest of the defendant was explained, or justified, by Agent Johnson when he testified, explaining that to have arrested the defendant earlier would have required the exposure of Nabors as an undercover agent precipitately.

Admittedly, the State's witness, Nabors, could not be characterized as a model citizen. Defendant's counsel spent considerable time during the trial in an attempt to impeach Nabors by offering evidence of Nabors' prior conviction of a felony (which was described by Nabors as the crime of "rape with consent") by showing prior inconsistent statements allegedly made while Nabors was under oath in a criminal trial in Michigan, by attempting to show prior criminal activities by Nabors (at the time of trial, Nabors was facing charges of armed robbery and conspiracy in Black Hawk County), of Nabors' use of drugs and of his trafficking in drugs, and of the fact that Nabors had committed perjury in a prior trial in Michigan where he had been employed as an informer.

The trial judge refused to permit defendant's counsel's efforts to impeach on the grounds that the efforts to impeach as aforesaid were attempts to prove isolated incidents of untrustworthiness and evidence of specific criminal acts, some for which Nabors had not been convicted. Defendant's counsel also interrogated Nabors on cross-examination as to whether Nabors had attempted to make other purchases of drugs from the defendant, whether Nabors had lied to Agent Johnson, and whether Nabors, while acting as a police informer in the Waterloo area, received payoffs from drug pushers for introducing addicts to them, but objections to such a line of testimony were sustained. Defendant's counsel made numerous offers of proof, touching the above lines of interrogation out of the presence of the jury.

On cross-examination of the defendant, the prosecutor propounded to the defendant the following question:

"Have you ever given a statement . . . to the Waterloo Police Department or any law enforcement agency indicating your whereabouts on that date?"

The question referred to the date, June 9, 1972. While the above question was being propounded to the witness, the witness volunteered a negative answer before the prosecutor had an opportunity to complete the question. Immediately defendant's counsel moved for a mistrial, alleging that the above question violated defendant's Fifth Amendment right to remain silent, which objection was overruled. The question was, however, stricken by the trial judge and the trial judge immediately admonished the jury to disregard the question and any answer which was in the record responsive to it.

Defendant based his defense on alibi. He introduced evidence tending to prove that he was enroute from Fort Wayne, Indiana, to Waterloo at the time of the alleged sale of heroin to Phillips which was eventually delivered to Nabors. To buttress his alibi defense, defendant introduced a telephone bill which he claimed indicated a telephone call had been made from Waterloo to Fort Wayne by a witness, Mrs. Nicholson, at midnight or just prior to midnight, on June 9, upon defendant's arrival in Waterloo from Fort Wayne. Witnesses for the telephone company, however, indicated the telephone call in question had been made 24 hours prior to the time defendant claimed the phone call had been made. Such testimony refuted the alibi evidence of the defendant completely, and defendant then moved for a

continuance based on the contention that an element of surprise had been interjected into the record, but the court overruled the motion for continuance.

At the close of the State's evidence, defendant moved for a directed verdict, which was overruled and his motion was renewed at the close of all the evidence and again overruled. Defendant's post-verdict motion for new trial was overruled, defendant was sentenced, and this appeal followed.

The defendant presented the following issues for review:

(A) Trial court erred in permitting to stand a guilty verdict based on the uncorroborated testimony of an addict informer.

(B) Trial court erred in refusing to permit defendant to cross-examine the witness Nabors concerning his alleged previous criminal activity.

(C) Trial court erred in denying defendant's motions for continuance on the grounds that:

1) defendant was surprised by the testimony of the State refuting his alibi, and

2) trial court erred in refusing to correct a record made concerning Nabor's previous conviction of rape.

(D) Trial court erred in overruling defendant's motion for a mistrial after the prosecutor asked defendant on cross-examination a question which was in violation of defendant's Fifth Amendment right to remain silent.

(E) Trial court erred in admitting evidence that Glenn "Bubba" Phillips was smoking marijuana on the afternoon of June 9, as the same was irrelevant to the issue of defendant's guilt, and therefore inadmissible.

(F) Trial court erred in excluding a transcript of evidence, specifically the testimony of Nabors in a trial in Michigan, on the basis the same was hearsay.

(G) Trial court abused its discretion in refusing to permit cross-examination of Nabors concerning Nabors' commission of certain crimes, including perjury.

(H) That the cumulative effect of the specifically-stated issues was such as to deny defendant a fair and impartial trial.

I. Defendant contends his motions for directed verdict made at the close of the State's evidence and renewed at the close of all the evidence, should have been sustained because the uncorroborated testimony of an addict informer is insufficient to establish guilt beyond a reasonable doubt of a person charged with the unlawful sale of drugs.

We do not agree with defendant the testimony of Nabors was entirely uncorroborated. Agent Johnson and Sgt. Helgesen had Nabors under surveillance from the time they searched him and furnished him with money to make the purchase of drugs until he entered the Super Chef Lounge, and both officers testified they saw defendant's car near the Lounge.

Nor do we agree with defendant that the testimony of an informer must be corroborated. In State v. Wiese, 182 N. W.2d 918, 920 (Iowa 1971), we held that an informer-buyer is not an accomplice, and adopted the rationale that in order to be categorized as an accomplice a person would be liable to prosecution for the identical crime the defendant is charged with having committed. Under 782.5, The Code, the testimony of an accomplice must be corroborated but we are unwilling to say, in the light of our holding in State v. Wiese, *supra*, that Nabors under the factual situation here was an accomplice of the defendant.

Defendant cites several authorities from the State of Illinois where there have apparently been holdings that the testimony of an addict informer must be corroborated. Defendant cites People v. Dade, 109 Ill.App.2d 337, 248 N.E.2d 844, 846 (1969); People v. Watkins, 68 Ill.App.2d

389, 216 N.E.2d 494, 496 (1966). We are not disposed to follow the reasoning of the Illinois courts in this regard. See State v. Burton, 201 N.W.2d 492, 493 (Iowa 1972) and citations.

II. Defendant questions the propriety of the court's ruling excluding evidence of specific instances of misconduct and criminal activity by the informer Nabors. Specifically, defendant desired to introduce evidence that Nabors was allegedly a user and heavy trafficker in drugs, that he had previously provided unreliable information as a drug informer, that he was allegedly receiving payoffs from people in the drug culture in the Waterloo area, that he was at the time of trial involved in conspiracy, false pretenses, armed robbery and murder charges, and that Nabors had allegedly lied to his police contact in the past.

■ Defendant cites State v. Wilson, 173 N.W.2d 563, 566 (Iowa 1970), and State v. Bolds, 244 Iowa 278, 282, 55 N. W.2d 534, 536, as bearing on the principle that evidence related to offenses other than that charged is admissible if it tends to establish motive, intent, absence of mistake or accident, a common scheme or system of criminal activity and identity of the person charged with the commission of the crime. We do not view the cited authorities as applicable to the situation here, for they relate specifically to substantive proof of guilt of a defendant rather than to impeachment of a witness. Where the exceptions above stated apply, the proof of similar transactions involving crime must be clearly shown, and mere suspicion is insufficient. State v. Armstrong, 183 N.W.2d 205, 208 (Iowa 1971).

Defendant also contends that under the "similar happenings and transactions" rule [McCormick on Evidence, § 163 (1954)], the alleged false information given in a prior case by Nabors is admissible. Defendant cites no Iowa case supporting his position in this regard. The alleged false information was apparently given in a previous Michigan trial in which Nabors testified as an informer, and in testifying in Michigan, Nabors apparently did not tell the truth as to why he had been held in jail in Waterloo.

■ Proof of some misconduct (as opposed to specific criminal acts) is admissible to discredit witnesses. In State v. Crawford, 202 N.W.2d 99, 104 (Iowa 1972), we said:

"We have repeatedly held admissibility of specific acts of misconduct on cross-examination to attack credibility is within trial court's discretion and will be disturbed only when such discretion has been abused."

We cannot conclude the trial court abused its discretion in refusing to permit such discrediting evidence.

■ The general moral character of a witness may be proven for the purpose of testing his credibility. Section 622.18, The Code, 1973. However, as this court said in State v. Alberts, 241 Iowa 1000, 1002, 43 N.W.2d 703, 705, such proof must be confined to the general reputation of the individual and should not be directed to proof of specific vices or traits of character. See Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1284, 300 N.W. 551, 554:

"The prevailing rule is that testimony to prove the character of a witness must be confined to the general reputation which he sustains in the community where he lives. Evidence based upon specific acts or conduct upon particular occasions is inadmissible. Such testimony raises collateral issues and diverts the minds of the jurors from the real issues."

And, in King v. Chicago, M. & St. P. Ry. Co., 138 Iowa 625, 627, 116 N.W. 719, 720, this court said:

"Testimony as to particular instances where he spoke an untruth in the pursuit of his occupation is inadmissible."

The rule that particular acts of misconduct are not provable by extrinsic testimo-

ny is of long standing duration, and is based not on relevancy considerations but rather on an auxiliary policy of an attempt to avoid confusion of issues and an attempt to prevent unfair surprise to a potential witness. 3A Wigmore, Evidence, § 978 (Chadbourn rev. 1970). Two situations may present themselves where the policy reasons are vitiated and thus the rule is not invoked:

(a) proof of a particular crime by record of conviction, and

(b) proof of particular instances of misconduct by cross-examination of the witness himself. 3A Wigmore, *supra*, § 978.

In regard to the latter instance, particularly relevant to the case at bar, discretion is vested in the court to guide examination. See 3A Wigmore, *supra*, § 982.

■ It is clearly the law in Iowa that extrinsic evidence of specific misconduct or criminal acts of a witness is inadmissible to impeach him except as heretofore noted. The limitation of cross-examination lies within the exercise of sound judicial discretion on the part of the trial court. See State v. Crawford, *supra*, 202 N.W.2d at page 104.

■ We see no constitutional principle involved in this assignment—it refers to nothing more nor less than a typical instance of a trial court exercising its discretion to control or limit cross-examination. Cf. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

III. During the course of trial, defendant made three separate requests for continuance, all of which were overruled. Rule 183, Rules of Civil Procedure, as the same is made applicable to criminal proceedings by § 780.2, The Code, provides the framework for this assignment of error or statement of issues which defendant contends dictates a reversal.

■ Defendant concedes the granting of a continuance rests in the sound discretion of the trial court. State v. Cowman, 212 N.W.2d 420, 423 (Iowa 1973). However, defendant contends the trial court abused its discretion in overruling the motions. Defendant based his motions for continuance on three different grounds:

(1) surprise evidence not found in the minutes of testimony accompanying the information;

(2) surprise testimony that defendant's proof of alibi related to a time different from the time when the alleged crime occurred; and

(3) trial court's refusal to correct an erroneous record by taking judicial notice of another state's law on statutory rape.

■ The surprise evidence not found in the minutes of the testimony accompanying the information referred to the testimony of the witnesses Jerry Johnson and Helgesen as to the presence of defendant's car at the Super Chef Lounge at the time the crime was alleged to have been committed. Defendant points out that such was the only evidence which corroborated the witness Nabors' testimony. However, as we have noted *infra,* the testimony of Nabors was not required to be corroborated since he was not an accomplice to the crime. Further, the fact that such isolated item of evidence was not endorsed on the minutes of testimony does not afford a ground for reversal, because the State is not required to set out in the minutes all aspects of the testimony of a prospective witness. See State v. Habhab, 209 N.W.2d 73, 75–76 (Iowa 1973). The court did not abuse its discretion in overruling the motion for continuance bottomed on this circumstance.

■ To establish his defense of alibi, defendant relied on the interpretations of a telephone bill by telephone company employees, specifically with regard to the time of day a certain telephone call was

made. When the defendant's testimony in this regard was refuted by witnesses for the State on rebuttal, defendant contended he was entitled to a continuance to evaluate such evidence and plan accordingly since it destroyed or refuted his alibi. Again, we observe it is largely within the trial court's discretion to grant or refuse to grant a continuance on the ground of surprise. See Herrick, Underhill's Criminal Evidence, § 536, p. 1337 (5th Ed.). Defendant's request for a continuance was obviously an attempt to reestablish the alibi testimony which had been discredited.

Each case must be decided on its own facts. State v. Myers, 248 Iowa 44, 51, 79 N.W.2d 382, 387. The court granted an extended lunch hour recess to enable defendant to check his alibi testimony, and refused to grant a continuance for a period of several days on the rationale that defendant's witnesses had already sufficiently established their reliance on the telephone billing in fixing the whereabouts of defendant on the date and at the time of the alleged crime.

On cross-examination, Nabors admitted that he had been convicted of a felony he described as "rape with consent". Defendant asked the court to take judicial notice of the fact there was no such crime in Michigan, or, in the alternative, to grant a continuance. The court declined to either take judicial notice of the Michigan statute or to grant the continuance requested, but informed defendant's counsel he could introduce a certified copy of Nabors' conviction.

■ A continuance should be granted only on a ground which satisfies the court that substantial justice will be more nearly obtained. State v. Pell, 140 Iowa 655, 663, 119 N.W. 154, 157. Neither the alleged surprise testimony nor the refusal of the trial court to take judicial notice of proceedings in a court of another state prejudiced the defendant unduly. See State v. Cowman, *supra*.

IV. In his fourth assignment of error, defendant contends trial court erred in refusing to declare a mistrial on defendant's motion when the prosecutor, on cross-examination of defendant, asked the following question:

"Have you ever given a statement . . . to the Waterloo Police Department or any law enforcement agency indicating your whereabouts on that date?"

Defendant insists the question so posed violated defendant's Fifth Amendment right to remain silent.

Although the court overruled defendant's motion for a mistrial, it did order the question stricken, and admonished the jury to disregard the question and any answer to the same that appeared in the record. Defendant had answered "No" before defense counsel could interject his objections.

■ It is now argued that the jury interpreted this as a refusal on the part of the defendant to give a statement to the police. Defendant contends the admonition to the jury was inadequate to erase the prejudicial effect to defendant's right against self-incrimination. See State ex rel. Reindeau v. Tahash, 276 Minn. 26, 148 N.W.2d 557. The *Tahash* case dealt with repeated questions to the defendant by the prosecutor as to whether defendant had offered an explanation at preliminary examination of his possession of stolen property. An order to strike and an admonition by the trial court to cure the error was held ineffective on appeal and the case was reversed. We have here, however, no indication of repeated questioning, coupled with an erroneous instruction or unexplained possession of stolen goods, as was present in *Tahash,* serving to distinguish the *Tahash* case from the matter at bar. The error was over-emphasized by both counsel and the court in *Tahash*; whereas here a single question was asked and objection was made, the jury was excused

while counsel argued the objection, the jury was called back and admonished, and the trial continued—a sequence which may have emphasized the prejudicial question, but not in our judgment enough to warrant a mistrial.

We are not persuaded the action of the trial court in refusing to sustain the motion for mistrial was of constitutional proportions here. The situation cannot be equated with the situation in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705, or Griffin v. California, 380 U. S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. This was not a comment by the State on defendant's failure to testify at his trial. Annot. 24 A.L.R.3d 1093. The reference was to defendant's failure to give a statement to police prior to trial. In State v. Holt, 261 Iowa 1089, 1096, 156 N.W.2d 884, 888, we said:

"* * * evidence as to what a defendant did or refused to do or said incident to arrest * * * is not the same as comment on failure to testify at the trial."

And, in State v. Peterson, 189 N.W.2d 891, 896 (Iowa 1971), we said:

"Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to reversal."

See also State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518.

We are abidingly satisfied the admonition by the court to the jury to disregard the question removed any prejudice to the defendant. See generally Donnelly v. DeChristoforo, — U.S. —, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

V. Defendant next contends trial court erred in admitting certain evidence over defendant's objections to its relevancy and further posits error on the grounds that such evidence was prejudicial. Specifically, defendant asserts the court erred in permitting the witness Nabors to testify that when he first saw Glenn "Bubba" Phillips on the afternoon of June 9, 1972 in the Super Chef Lounge, Phillips was smoking a marijuana cigarette.

Clearly the testimony of Nabors that when he first observed Phillips, Phillips was using marijuana is of probative force and value. It served to point out Phillips to Nabors as a user of drugs and to single him out as an individual who could be approached to either sell drugs to Nabors or procure the same for him.

Questions of relevancy and materiality of evidence rest within the sound discretion of the court. State v. Graham, 203 N.W.2d 600, 604 (Iowa 1973); State v. Battle, 199 N.W.2d 70 (Iowa 1972). Further, the evidence that Phillips was observed using drugs lends credence to Nabors' story that Phillips was available to act and did act as his intermediary in securing the drugs from defendant. Evidence must be unduly and clearly prejudicial to the defendant for its admission to constitute reversible error. State v. Wallace, 259 Iowa 765, 771, 145 N.W.2d 615, 619.

In State v. Mayhew, 170 N.W.2d 608, 619 (Iowa 1969), this court said:

"A common test to determine whether a ruling on the admission of evidence was prejudicial is whether, upon a review of the record, it sufficiently appears the rights of the complaining party have been injuriously affected by the error or he has suffered a miscarriage of justice."

The evidence complained of was probative of the fact that Nabors did have contact with the defendant regarding a transaction in narcotics and we are unable to

conclude that it was unduly prejudicial to the defendant. The trial court committed no error in admitting the same.

VI. Defendant next contends the trial court erred in sustaining the State's objection to the admission of defendant's Exhibit "1", a stenographic record of the testimony of Roosevelt Nabors in a proceedings in the Circuit Court of Michigan for Muskegon County in a matter in which one Lewis Howard was respondent.

On cross-examination in the matter before us here, Nabors admitted giving the testimony which appears in defendant's Exhibit "1". The court, in ruling on the objections to the admission of Exhibit "1" found the same to be hearsay and stated that no proper foundation had been laid to show a prior statement inconsistent with the context of Exhibit "1". In other words, Nabors was questioned by defendant on cross-examination as to whether the questions in Exhibit "1" had been propounded to him in Michigan, and he admitted such fact, and further admitted having given the answers contained therein.

■ Defendant then sought to introduce the exhibit itself for the purpose of written emphasis to the jury and for use as a basis for further questioning, as defendant desired to show, and in fact did show, Nabors had perjured himself in making the statement contained in Exhibit "1". In ruling on the objections to the admission of Exhibit "1", the court observed, "he's admitted everything that's in there were questions asked and answers given by him." We see no error in the court's ruling. In State v. Badgett, 167 N.W.2d 680, 685 (Iowa 1969), we said:

"It is well established that the exclusion of evidence tending to show a certain fact where the fact in question is fully established by other admitted evidence is not error." (citations). And

see Wigmore on Evidence, IIIA, Chadbourn Rev., § 1037, p. 1042.

■ VII. Defendant's next complaint is that trial court abused its discretion when it refused to permit cross-examination of the informer Nabors concerning the commission of certain crimes, including the crime of perjury allegedly committed by Nabors while acting as an undercover agent. We do not read the record as indicating trial court impermissibly restricted Nabor's cross-examination.

■ We once again observe that the admissibility of specific acts of misconduct on cross-examination to attack credibility of a witness is within the trial court's discretion and will be disturbed only when such discretion has been obviously abused. State v. Crawford, *supra,* 202 N.W.2d at 104.

Defendant cites and relies on In re Thorman's Estate, 162 Iowa 237, 144 N.W. 7, where an attorney witness was cross-examined as to his disbarment. *Thorman* was cited in State v. Crawford, *supra,* as an example of the exercise of proper judicial discretion. We have commented hereinabove on the interrogation of a witness as to his criminal activity as a method of impeachment. We find no merit in this contention of defendant.

VIII. In his last statement of issues presented for review defendant contends that even if there are no separate reversible errors in the record the cumulative effect of several harmless errors denied defendant a fair and impartial trial. We have been unable to find, as we have indicated above, any error in the record necessitating reversal, either separately or cumulatively.

This case is, therefore, affirmed.

Affirmed.