The OFFICIAL COMMITTEE OF DISPUTED LITIGATION CREDITORS, Appellant,

v.

McDONALD INVESTMENTS, INC., Orison F. McDonald, Orison F. ("Mack") McDonald II, Debtors-Appellees.

Civ. A. No. 7–84–103.
Misc. A. No. 7–216.
Bankruptcy Nos. 781–00059 to 781–00061.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Sept. 7, 1984.

Bryan D. Bruner, Fort Worth, Tex., for appellant.

Jay M. Vogelson, Dallas, Tex., for debtors-appellees.

## MEMORANDUM OPINION

MARY LOU ROBINSON, District Judge.

The Official Committee of Disputed Litigation Creditors has appealed to this Court from an Order of the Bankruptcy Court authorizing the expenditure of funds from the commingled estates of two individuals and one corporation—Orison F. McDonald, Orison F. ("Mack") McDonald II, and McDonald Investments, Inc.,—currently in Chapter 11 bankruptcy, for the purpose of paying bail and retaining criminal counsel for one of the debtors, Orison F. ("Mack") McDonald II.

*Background*

In August, 1981, McDonald Investments, Inc., Orison F. McDonald and Orison F. ("Mack") McDonald II, filed petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Wichita Falls Division. They are currently operating McDonald Investments as debtors in possession. The commingled assets of the three estates total just over $600,000.

Other than a few trade creditors with comparatively insignificant claims, all creditors of the estates are represented by the Official Committee. The "disputed litigation" consists of several civil suits filed in

Minnesota and Texas by investors in the debtors' oil and gas operations. The suits allege numerous violations of both federal and state securities laws and seek recoveries far in excess of the combined assets of the three estates.

The Minnesota litigation ("the *Hayden* suit") dwarfs the Texas actions. The *Hayden* suit consists of four consolidated complaints brought by more than 50 plaintiffs in the United States District Court for the District of Minnesota. In December, 1982, that Court granted summary judgment to the plaintiffs and awarded them restitution, interest, attorneys' fees and costs totaling $3,270,292.78, for the debtors' violations of the Minnesota Blue Sky Act, Minn.Stat. Ann. §§ 80A.01–.31 (West Supp.1984). The debtors appealed.

*The Criminal Action*

On March 18, 1981, before the filing of the bankruptcy proceedings, Orison F. ("Mack") McDonald II was charged by the State of Minnesota with the sale of unregistered securities (four counts) and fraud in the sale of securities (five counts). The complaining witnesses in this criminal action are essentially the plaintiffs in the *Hayden* suit. Pursuant to a fugitive warrant issued on the basis of a complaint and information filed by a Minnesota prosecutor, he was arrested in Wichita County, Texas, on March 31, 1981. He was discharged on August 31 because no extradition warrant had been issued. The Governor of Texas issued a warrant on October 16 and Mack McDonald was again arrested on October 23. He sought habeas corpus from state court that same day.

The state district court granted the extradition request and its judgment was affirmed on appeal. *Ex parte McDonald,* 631 S.W.2d 222 (Tex.App.—Fort Worth 1982, pet. ref'd), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983). McDonald then sought habeas relief in this Court, which denied him relief. The Fifth Circuit affirmed. *McDonald v. Burrows,* 731 F.2d 294 (5th Cir.1984). McDonald was directed to surrender voluntarily in the State of Minnesota not later than August 20, 1984.

*The Proceedings Below*

On August 14, 1984, Jay Vogelson and the law firm of Moore & Peterson, then serving as special counsel to the debtors in the civil suits, filed a motion with the Bankruptcy Court seeking authorization for the debtors to employ them as special counsel in the Minnesota criminal proceedings, to employ criminal counsel in Minnesota, to post whatever sum was set as bail by the Minnesota court, and to advance a retainer of $25,000 to the Minnesota criminal counsel. The next day, August 15, 1984, the bankruptcy court held a hearing at which two witnesses testified, Mack McDonald and Jay Vogelson.

McDonald testified that the assets of the three estates had been commingled and that he had no assets other than those under the control of the bankruptcy court. He states that his take-home pay from McDonald Investments is just under $4,000 per month, all of which goes to pay his living expenses.

Vogelson, an attorney from Dallas, "testified" about his opinions concerning Minnesota law of collateral estoppel, the necessity of proving intent in a criminal prosecution under the Minnesota Blue Sky Act, McDonald's rights under the 5th, 6th, 8th and 14th Amendments to the United States Constitution, and the time it would take any other counsel to achieve Vogelson's understanding of the case.

The bankruptcy court granted the motion, finding:

A. That the facts and the legal issues in the *Hayden* civil case and the criminal complaint filed by the State of Minnesota are essentially the same, that the facts involved are extensive and complicated such that it would require a substantial amount of time and effort for a new counsel to become familiar with such facts sufficient to provide an adequate and effective defense to the criminal complaint;

B. [T]o deny these expenditures would deprive Mack McDonald of his rights under the United States Constitution to due process of law under the Fifth and Four-

teenth Amendments, effective assistance of counsel under the Sixth Amendment, and with regard to bail under the Eighth Amendment.

C. It is in the best interest of the estate of all the Debtors that Mack McDonald be authorized to employ counsel in connection with the criminal complaint because of the identity of issues between the *Hayden* case and the criminal complaint, and the probable availability of collateral estoppel or other grounds by which a criminal conviction could be used as a basis for the rendition of judgment in the *Hayden* case, a judgment that likely would be in excess of the combined estates of the Debtors.

The court reduced the requested retainer to $10,000.

The Official Committee moved for a stay pending appeal which was denied from the bench. The Official Committee next sought a stay from this Court, which was granted the next day, August 16, 1984. McDonald's request to the Fifth Circuit to vacate the stay was denied.

This Court then ordered an expedited briefing schedule and filing of the record. McDonald has specifically asked the Court not to hold oral argument in order to expedite consideration of the appeal. Since the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument, R.Bankr.P. 8012(3), this case is ready for disposition.

### Jurisdiction

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158 (1984), as amended by the Bankruptcy Amendments of 1984, Pub.L. No. 98–353 (July 10, 1984). If leave to appeal is required, it is hereby granted. R.Bankr.P. 8003(c).

### Estate Funds for Criminal Defense

The Official Committee's first argument is that the bankruptcy court may not au-

thorize the expenditure of funds of a debtor estate for the payment of fees for legal services rendered or to be rendered in defending the debtor from criminal charges.[1] The few courts which considered this issue are split.

In *In re Delk*, 27 B.R. 86, 87 (Bankr.W. D.Okla.1983), the debtor in a Chapter 11 proceeding sought to use estate money to pay for his defense of a criminal indictment brought in federal court. Without discussion, the court found "that appointment of an attorney to defend against an indictment and use of funds of the Debtor's bankruptcy estate for those purposes is not authorized by 11 U.S.C. § 327(a) in that it does not relate to duties under Title 11 U.S.C." Similarly, the court in *In re Pajarito American Indian Art, Inc.*, 11 B.R. 807, 811 (Bankr.D.Ariz.1981), found, without discussion, that "estate moneys cannot be used to pay the Debtor's attorney in representing him when he has been charged with a crime."

Conversely, in *In re Duque*, 33 B.R. 199, 200 (Bankr.S.D.Fla.1983), the court found "nothing in the Code which would deny this debtor the option to use the assets or property of his chapter 11 estate" to retain criminal counsel to defend the debtor in a pending prosecution. Although the court assumed that the debtor would be eligible for the appointment of defense counsel at public expense, it "[could not] believe that it was intended by the Code that as a condition to relief under chapter 11 (or for that matter any other chapter), the debtor's constitutionally protected right to counsel in a criminal proceeding be denied or restricted in any way."

■ Proper analysis of the question begins with the language of the Bankruptcy Code. *In re Tashof*, 33 B.R. 225, 226 (Bankr.D.Md.1983). Code § 327, 11 U.S.C. § 327 (1984), provides, in relevant part:

(a) Except as otherwise provided in this section, the trustee[2], with the court's

---

1. McDonald has surrendered in Minnesota and posted bail, thus mooting the bail question.

2. McDonald, as a debtor in possession, generally has the rights and performs the functions of a trustee but subject to the limitations of a trustee,

which includes the power to employ an attorney only with the bankruptcy court's approval. 11 U.S.C. § 1107(a) (1984); *Matter of Triangle Chemicals*, 697 F.2d 1280, 1283–84 (5th Cir. 1983).

approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title

.     .     .     .     .

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

■ As noted in *Duque,* nothing in the express language of § 327 prohibits the employment of criminal counsel to defend the debtor in a pending criminal prosecution. The bankruptcy court may authorize the employment of defense counsel if the criteria of either § 327(a) or § 327(e) are met, i.e., if the employment of defense counsel either assists the debtor in possession in carrying out his duties under Chapter 11 or is in the best interest of the estate. *Tashof,* 33 B.R. at 227. *See Matter of Colin,* 27 B.R. 87 (Bankr.S.D.N.Y. 1983). Paragraph C of the bankruptcy court's findings in this case plainly indicate that the order authorizing the employment of criminal counsel is bottomed on § 327(e).

### Best Interest of the Estate

■ The Court turns to the question of whether the bankruptcy court's determination that the employment of criminal counsel is in the best interest of the estate is correct. The operative facts are undisputed, thus this determination is a question of law. As such, it is freely reviewable and this Court must independently determine its correctness. *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980); *In re Cumpton,* 30 B.R. 49, 50 (N.D.Tex.1983).

The bankruptcy court's determination in ¶ A of its findings that the facts and the legal issues in the *Hayden* civil case and the criminal complaint are essentially the same is correct. Although the *Hayden* plaintiffs dropped their fraud claims, McDonald's civil and criminal liabilities for the sale of unregistered securities under the Minnesota Blue Sky Act are based on the same operative facts. If a criminal conviction would preclude the estate from litigating its liability in the *Hayden* suit, then employing criminal counsel for McDonald is arguably in the best interest of the estate.

McDonald's central concern, as expressed in the bankruptcy court and in his appellate brief, is that the question of whether the interests in oil and gas he sold are securities within the meaning of the Minnesota Blue Sky Act will be determined in the criminal proceeding, thus precluding relitigation of the issue in the civil suit. At the time the bankruptcy court entered its Order, only the Minnesota district court had ruled on this issue, adversely to McDonald. During the pendency of this appeal, the Eighth Circuit issued its ruling on the debtors' appeal of the district court's grant of summary judgment. *Hayden v. McDonald,* 742 F.2d 423 (8th Cir.1984).

By affirming the district court's finding that the oil and gas interests at issue were securities under the Minnesota Blue Sky Act as a matter of law, at 428, the Eighth Circuit has devitalized McDonald's position. With the exception of a handful of plaintiffs whose claims may be barred by the defense of *in pari delicto,* by the statute of limitations, or by the lack of a sufficient nexus between their purchases and the State of Minnesota, the *Hayden* suit is basically over. Having once funded full scale litigation of whether the interests were securities, it is not in the best interest of the estate to fund a second full scale litigation of the same issue which *might* result in a favorable state court decision which *might* lead to a reconsideration of the Eighth Circuit's decision.[3] Further, the

---

**3.** If this question should be considered one of fact, then this Court finds that the bankruptcy court's factual finding that employment of criminal counsel is in the best interest of the estate is clearly erroneous and should be set aside. R.Bankr.P. 8013.

liabilities of the estate will not be increased if McDonald is convicted.

Also, even if the Eighth Circuit had not already ruled in *Hayden,* the collateral estoppel or res judicata effect of the criminal proceeding on the civil actions is not at all apparent. The federal district court in Minnesota hearing the *Hayden* suit would apply Minnesota law of collateral estoppel and res judicata. *Kuehn v. Garcia,* 608 F.2d 1143, 1147 (8th Cir.1979).

The Minnesota Supreme Court has said that "[t]he general common law rule has been that a criminal judgment is not admissible as evidence in a civil action to establish a fact determined in the criminal action nor does it constitute a bar to a subsequent civil action based upon the offense of which the party stands convicted and that the judgment of conviction is not admissible in evidence for that purpose." *Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968), *cert. denied,* 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969). The court went on in that case to abandon the common law rule where a party convicted of a crime later sought to profit from that crime in a civil suit. Thus the plaintiff in *Thompson* was barred from bringing suit for the proceeds of his wife's life insurance policy after being convicted of uxoricide. 163 N.W.2d at 294. Subsequent Minnesota cases have reaffirmed, but not expanded, on this narrow exception to the common law rule. *See, e.g., Simonson v. Bergstrom,* 306 Minn. 178, 235 N.W.2d 389 (1975) (defamation action barred by criminal conviction).

■ On the other hand, a criminal acquittal is not determinative of a subsequent civil suit arising out of the same facts. *Matter of Estate of Congdon,* 309 N.W.2d 261 (Minn.1981) (prior criminal acquittal did not bar civil suit to determine accused's entitlement under trusts and will of deceased).

■ A guilty plea would be admissible in the civil suit as an admission against interest, *Glenn Falls Group Ins. Corp. v. Hoium,* 294 Minn. 247, 200 N.W.2d 189 (1972);

*Kvanli v. Village of Watson,* 272 Minn. 481, 486, 139 N.W.2d 275, 279 (1965); *Klein v. Pasch,* 153 Minn. 291, 190 N.W. 338 (1922); but would apparently be accorded neither a res judicata nor collateral estoppel effect.

■ In sum, while "[i]t seems quite likely that the Minnesota Supreme Court will ... amplify on its prior decisions by looking to the flexible approach set forth in section 88 of the Restatement and [*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ] for guidance in its future decisions on the issue of offensive use of collateral estoppel," *Bertrand v. Johns-Manville Sales Corp.,* 529 F.Supp. 539, 542 n. 3 (D.Minn.1982), the collateral estoppel or res judicata effect of McDonald's conviction, if he is convicted, is unsettled, running the gamut from res judicata to inadmissible evidence. It is not in the best interest of the estate to fund Mack McDonald's criminal defense when the effect on the estate of conviction or acquittal is so uncertain.

### McDonald's Right to Counsel

Even if the employment of criminal counsel is not in the best interest of the estate, and thus beyond the power of the bankruptcy court to authorize, McDonald argues that he has a Sixth Amendment right to spend the funds of the estate on his criminal defense because to prevent him from doing so would deprive him of the effective assistance of counsel at his criminal trial. To echo another court, this contention is "not even superficially plausible." [4]

The Sixth Amendment guarantees that McDonald will not be imprisoned after conviction if he has not had the assistance of counsel in his criminal proceeding. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979). If he is unable to employ counsel, it is the duty of the Minnesota court to appoint counsel to represent

---

**4.** *McDonald,* 731 F.2d at 298.

him as a necessary requisite of due process of law. *See Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932).

The determination of McDonald's eligibility for appointed counsel will be made based on the facts of his situation. As Justice Goldberg has said, there is no mechanical formula for determining a defendant's right to appointed counsel:

An impoverished accused is not necessarily one totally devoid of means.... An accused must be deemed indigent when at any stage of the proceedings [his] lack of means ... substantially inhibits or prevents the proper assertion of a [particular] right or claim of right.

*Hardy v. United States,* 375 U.S. 277, 289 n. 7, 84 S.Ct. 424, 431 n. 7, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring). *Accord, Minnesota ex rel. Riendeau v. Tahash,* 276 Minn. 26, 148 N.W.2d 557, 559–60 (1967). Numerous courts have noted that a consideration of the accused's debt situation is appropriate in determining his eligibility for appointed counsel. *See, e.g., In re Smiley,* 66 Cal.2d 606, 58 Cal.Rptr. 579, 427 P.2d 179, 187–88 (1967); *Connecticut v. Harris,* 5 Conn.Cir.Ct. 313, 250 A.2d 719, 720–21 (1968); *Bolds v. Bennett,* 159 N.W.2d 425 (Iowa 1968); *Washington ex rel. Brundage v. Eide,* 83 Wash.2d 676, 521 P.2d 706, 708 (1974). The test, in short, "turn[s] not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so." *Ohio v. Tymcio,* 42 Ohio St.2d 39, 325 N.E.2d 556, 560 (1975).

■ Thus a Minnesota court determining McDonald's eligibility for appointed counsel would probably take into consideration the unavailability of assets of the bankruptcy estate for funding his criminal defense.[5]

Even assuming, improbably, that McDonald's Sixth Amendment right to counsel will be violated by the Minnesota courts, that gives him no greater rights in the bankruptcy court. His remedy for a constitutional violation must be sought in the state and federal courts of Minnesota.

*Procedural Errors*

■ The Official Committee also complains that the bankruptcy court failed to give it the 20 days notice required by Rule 2002(a)(7) for a hearing on an application for compensation or reimbursement of expenses totaling in excess of $100.[6] R.Bankr.P. 2002(a)(7). The Court agrees. Far from 20 days, the Official Committee had barely 20 hours notice of a hearing at which the bankruptcy court entered an Order which had the potential of dissipating all of the assets of the estate because of its unlimited bail provision. Indeed, one is struck by the "emergency" nature of this hearing following three years of protracted extradition litigation and held more than three months after the Fifth Circuit had affirmed this Court's denial of habeas relief. Any "emergency" was brought on solely by the dalliance of debtors' counsel and it was an abuse of discretion for the bankruptcy court to shorten the notice period to only 20 hours. Bankr.R.P. 9006(c)(1).

The Court also notes that the debtor's application failed to comply with Bankr. R.P. 2014(a).

*Conclusion*

The employment of criminal counsel for the debtor, while allowable under the Bankruptcy Code, is not in the best interest of the estate in this case. McDonald is not deprived of any of his constitutional rights by this prohibition on using assets of the estate to fund his criminal defense. Further, the bankruptcy court abused its direction by shortening the notice period on the debtor's application to 20 hours.

The bankruptcy court's "Order Amending Order Dated September 9, 1981, and For Other Purposes," entered on August 15, 1984, is hereby VACATED and this case REMANDED to the bankruptcy court with directions to enter an order denying the debtor's application for employment of

---

5. The Court expresses no opinion concerning the merits of any request McDonald might make for appointed counsel in the Minnesota criminal proceeding.

6. McDonald asserts that this issue was not raised below. While not raised in the oral argument, the notice issue was raised in ¶ 6 of the Official Committee's written response.

criminal counsel to defend him in the Minnesota criminal proceeding, and further proceedings not inconsistent with this Memorandum Order.

It is so ORDERED.