In re Petition of John M. STUART,
State Public Defender,
Petitioner.

State of Minnesota, Respondent,

v.

Roger L. Schleicher, Respondent.

No. C7–01–1824.

Supreme Court of Minnesota.

July 11, 2002.

John M. Stuart, State Public Defender, Minneapolis, for Petitioner.

Mike Hatch, Attorney General, St. Paul, Douglas L. Ruth, Steele County Attorney, Owatonna, Roger L. Schleicher, St. Peter Regional Treatment Center, St. Peter, for Respondent.

## OPINION

BLATZ, Chief Justice.

Respondent Roger Schleicher was indicted for first-degree murder and initially

appeared in court on this matter without counsel. A public defender was appointed to act as advisory or standby counsel, and later as counsel for Schleicher. The public defender brought a motion for discharge from representation based on the public defender's belief that Schleicher was not financially eligible given his ownership of an unencumbered home and receipt of a monthly pension. The district court denied the motion to discharge the public defender on the basis that real estate could not be considered a liquid asset available to pay an attorney. The State Public Defender (SPD) brought a petition for writ of mandamus in the court of appeals, seeking an order requiring discharge of the public defender. The court of appeals denied the petition. We reverse and by writ of mandamus order the district court to consider Schleicher's assets including his real property in determining his eligibility for public defense services.

Schleicher was indicted for first-degree murder in Steele County in connection with a shooting death that occurred at his residence on December 29, 2000. Schleicher initially appeared in court without counsel, and refused to fill out the financial eligibility application for public defender services. The court appointed a public defender to act as advisory or standby counsel, and in this capacity appointed counsel requested a Rule 20 evaluation of Schleicher's competency. *See* Minn. R.Crim. P. 20.01.

The district court conducted a Rule 20 competency hearing. During that hearing appointed counsel brought to the court's attention financial information Schleicher had disclosed during a psychological evaluation, in which Schleicher estimated his assets at $350,000, including a home, a 1997 Chevrolet Tahoe, and a monthly disability income of $2,000. Schleicher was required to pay $630 monthly in child support for three children, then aged 20, 17 and 15. Based on the information provided to the district court, appointed counsel asked that he be relieved of his duty as advisory counsel. The court denied the request, stating that Schleicher was not competent to waive counsel and that he needed representation. The court then modified the appointment from advisory counsel for Schleicher to an appointment for full representation. After this hearing, Schleicher was found to be mentally ill and incompetent and was committed to the Minnesota Security Hospital.

Based on a new psychological evaluation completed several months later, the court declared Schleicher competent to proceed in the criminal case. Appointed counsel brought a second motion to discharge the public defender's office from representing Schleicher, arguing that Schleicher's refusal to execute a financial statement in an application constituted waiver of his right to the appointment of a public defender. Appointed counsel further argued that Schleicher was financially able to obtain counsel. In support, appointed counsel submitted real estate records that showed that Schleicher was the sole owner of unencumbered real property with an assessed market value of approximately $104,000. Evidence was also presented indicating that on June 1, 2001, the day after he was found competent to stand trial, Schleicher filed a quit claim deed transferring ownership of his home to his son for consideration of "$500 or less."

Appointed counsel also informed the court that one month prior to the murder indictment, Schleicher applied for and was denied public defender representation on an unrelated criminal charge in another county. In that application Schleicher disclosed a gross annual income of $25,000, with monthly expenses including child support of $1,425. Schleicher also reported

owning a house valued at $100,000, a truck valued at $20,000, a boat and snowmobile worth $7,000, and $7,000 in cash on hand.

At the hearing on the motion to discharge the public defender in this case, Schleicher finally filled out an application for public defender services, disclosing a net annual income of $12,000 from railroad retirement, $400 in a savings account, and a car valued at $22,000 that was currently impounded. Schleicher further disclosed that he owned no boats or snowmobiles, no real property of any sort, and no other property of value. Upon examination, Schleicher admitted that he gave his home away without consideration to his son, and that it had an assessed value for tax purposes of $104,000. Schleicher explained that he gave his son the house because he did not want the state to take it as compensation for the cost of his care at the state facility to which he was committed.

Based on this evidence, the district court concluded that Schleicher qualified for public defender services. Appointed counsel objected to his continued appointment on the basis that the transfer of the real estate was fraudulent, and that Schleicher could obtain counsel by liquidating his home. The district court noted that while the transfer of the homestead "is perhaps voidable," the defendant did not appear to have the funds "immediately available" to hire counsel. The court stated that eligibility criteria required consideration of "liquid assets, which would be non-real estate, certainly non-homestead." In so doing, the court stated: "I don't believe the assets * * * based on the * * * at least questionable transfer of the defendant's homestead, is a liquid asset that [Schleicher] can have sufficient access to * * * go out and hire counsel with." The court also stated that if the property had stayed as Schleicher's homestead, "I don't

think normally I would have looked at that as a liquid asset."

The SPD then filed a petition for a writ of mandamus in the court of appeals, seeking the discharge of the public defender from representation of Schleicher. The court of appeals denied the petition holding that the SPD had not shown that Schleicher's assets were "liquid assets" as a matter of law, or that Schleicher was "clearly able" to pay the costs of a defense in a first-degree murder prosecution. The SPD now appeals the denial of its petition for a writ of mandamus.

■ We have not had an opportunity to articulate a standard of review for the district court's determination of financial eligibility for public defender services. Many courts hold that the decision to appoint counsel is within the discretion of the district court. See, e.g., Cooper v. State, 639 So.2d 1320, 1325 (Miss.1994) (holding whether defendant may proceed in forma pauperis is committed to sound discretion of trial court); State v. Rochefort, 129 Or. App. 296, 878 P.2d 1111, 1112–13 (1994) (applying abuse-of-discretion standard); State v. Wolverton, 193 Wis.2d 234, 533 N.W.2d 167, 175 (1995) (holding erroneous exercise of discretion for trial court to rule that court is bound by indigency criteria followed by public defender). But see State v. Vincent, 883 P.2d 278, 281 (Utah 1994) (noting "the underlying empirical facts regarding [a] claim of indigency are reviewable for clear error; the conclusion as to whether those facts qualify the defendant as indigent is reviewable for correctness"). We agree that review of the district court's appointment of the public defender should be for abuse of discretion.

■ This case also arises on a petition for a writ of mandamus. To obtain a writ of mandamus, a petitioner must establish that the court had a clear and present official duty to perform a certain act. *State*

*v. Pero,* 590 N.W.2d 319, 323 (Minn.1999). Where, as in this case, the act the court is charged with is a discretionary one, the petitioner must establish that failure to perform it " 'was so arbitrary and capricious as to constitute a clear abuse of discretion.' " *McIntosh v. Davis,* 441 N.W.2d 115, 118 (Minn.1989) (quoting *Baker v. Connolly Cartage Corp.,* 239 Minn. 72, 74, 57 N.W.2d 657, 658 (1953)). A writ of mandamus may be issued to require a court to exercise its discretion, but may not be issued to control how the court exercises its judicial discretion. *State v. Davis,* 592 N.W.2d 457, 459 (Minn.1999). The SPD identified the duty the district court failed to perform in this case as the inquiry into the liquidity of real estate assets to determine eligibility for public defender services.

Initially, we note that the district court properly made every effort to safeguard Schleicher's right to counsel while his competency was in question. In particular, the court recognized that Schleicher was not capable of waiving his right to counsel due to his mental illness. *See* Minn. R.Crim. P. 20.01, subd. 1 ("A defendant shall not be permitted to waive counsel who lacks sufficient ability to knowingly, voluntarily, and intelligently waive the constitutional right to counsel * * *."); *State ex rel. Riendeau v. Tahash,* 276 Minn. 26, 29, 148 N.W.2d 557, 559–60 (1967) (holding district court erred in not appointing counsel for pretrial hearing where competency was at issue). The court's action in this difficult procedural posture assured adequate representation during the competency proceeding and during the time that he was adjudicated incompetent to assist in his own defense. Once Schleicher was restored to competency, however, the court was faced with the question of his eligibility for public defender services.

We begin our analysis with the Sixth Amendment, which guarantees that an accused in a criminal prosecution has the right to the assistance of counsel for his defense. *Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding Sixth Amendment applicable to state criminal proceedings); *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (holding court's refusal to hear a defendant through counsel constitutes due process violation). In accordance with this constitutional principle, courts have long required appointment of counsel for criminal defendants who are financially unable to obtain counsel for their defense. *Gideon,* 372 U.S. at 344–45, 83 S.Ct. 792. "[A]ny person haled into court, who is too poor to hire a lawyer, cannot be assured of a fair trial unless counsel is provided for him." *Id.* at 344, 83 S.Ct. 792.

■ It is out of this concern for the right to counsel that we must jealously guard the resources of the SPD, and not provide counsel to those who are able to afford an attorney. The right to counsel necessarily encompasses the right to effective assistance of counsel, which requires time and preparation. When an ineligible defendant is provided with services by the public defender, those finite resources are improperly diverted from the representation of other clients of the public defender. Almost ten years ago we recognized that state funding for the Board of Public Defense has not kept pace with the increased workloads and responsibilities of our public defender system. *Dziubak v. Mott,* 503 N.W.2d 771, 775 (Minn.1993) ("Workload is too high in every [public defender] district given the current level of staff.") (quoting The Spangenberg Group, *Weighted Caseload Study for the State of Minnesota Board of Public Defense* 20 (1991)). The SPD asserts that not only has this situa-

tion not improved, it has perhaps gotten worse. For these reasons, qualification of applicants is essential so that the resources of the public defender system are not unnecessarily depleted by people who, in their own right, can obtain legal counsel with their own resources. Therefore, courts must not appoint counsel for a defendant who is financially capable of retaining counsel on his own but refuses to hire an attorney. *Hanson v. Passer*, 13 F.3d 275, 280 (8th Cir.1994); *Spevak v. United States*, 158 F.2d 594, 596 (4th Cir. 1946); *State v. Zimmer*, 198 Kan. 479, 426 P.2d 267, 272 (1967).

Under the Minnesota Rules of Criminal Procedure, a defendant is "financially unable to obtain counsel" if:

(1) The defendant, or any dependent of the defendant who resides in the same household as the defendant, receives means-tested governmental benefits; or

(2) The defendant, through any combination of *liquid assets* and current income, would be unable to pay the reasonable costs charged by private counsel in that judicial district for a defense of a case of the nature at issue; or

(3) The defendant can demonstrate that due to insufficient funds or other assets: two members of a defense attorney referral list maintained by the court have refused to defend the case or, if no referral list is maintained, that two private attorneys in that judicial district have refused to defend the case.

Minn. R.Crim. P. 5.02, subd. 3 (emphasis added). Because Schleicher does not receive a means-tested government benefit, and because the record does not demonstrate that he has attempted to secure private counsel and been refused, only category 2 is at issue here.[1]

The SPD argues that the equity value of real property fits the definition of "liquid asset" because it is readily convertible to cash. The district court concluded that the eligibility criteria required consideration of "liquid assets, which would be non-real estate, certainly non-homestead." Thus, the district court indicated its unwillingness to consider real estate as a liquid asset under any circumstance.[2]

While the term "liquid asset" is susceptible to common understanding, we have previously construed the term with specific regard to the context in which it arose. In *McNiff v. Olmsted County Welfare Dept.*, 287 Minn. 40, 176 N.W.2d 888 (1970), we held that the term could not be interpreted to exclude a beneficiary's interest in a testamentary trust in light of the purpose of the medical assistance program at issue, which was to provide medical care for those who could not pay for such care. *Id.* at 44–45, 176 N.W.2d at 892. Similarly, liquid assets for purposes of Minn. R.Crim. P. 5.02, subd. 3, must be construed in light of the context of public

---

1. The legislature has provided that a criminal defendant who is "financially unable to obtain counsel" is entitled to representation by the public defender. Minn.Stat. § 611.14 (2000). Minnesota Statutes § 611.17 (2000) requires that each judicial district screen applicants for public defender services, and applicants are required to disclose, among other things, the value of any real property owned.

2. We recognize that in Minnesota the homestead enjoys an exemption from seizure or sale upon legal process on account of any debt, other than a lien for work or materials performed on the homestead. *See* Minn.Stat. § 510.01 (2000). Protection from creditors is qualitatively distinct from eligibility for public defender services, however. While the legislature can decide as a policy matter to exempt homestead property from debtors, a district court is asked to determine whether an individual property owner is so devoid of resources as to be constitutionally entitled to appointment of counsel.

defender eligibility. If an asset can be readily converted to cash or used to secure an indebtedness, the asset should be considered liquid for purposes of Rule 5.02, given that public defender services are available only to those who cannot hire an attorney on their own. *See Bolds v. Bennett,* 159 N.W.2d 425, 428 (Iowa 1968) (providing that court determining public defender eligibility should consider readily available assets, such as property "of such nature and net value that it would be immediately accepted in lieu of or as a fee by a legally qualified attorney.")

■ We believe that the district court's unwillingness to consider whether the particular real estate owned is a liquid asset constitutes a failure to exercise the court's discretion. Under Minn. R.Crim. P. 5.02, the court has a duty to determine whether the assets of the applicant for public defender services, including real estate holdings, are liquid. The court's refusal to consider real estate assets thus constitutes a failure to perform an act that the court had a duty to perform. Therefore, the court of appeals erred in refusing to issue a writ of mandamus requiring consideration of Schleicher's real estate assets in this case.

■ We also note that the court of appeals appears to have placed the burden on the SPD to establish ineligibility for public defender services. Under federal law and in other states, the burden is on the defendant to show that he or she is financially unable to afford representation. *See, e.g. United States v. Lefkowitz,* 125 F.3d 608, 621 (8th Cir.1997); *State v. Smith,* 677 A.2d 1058, 1060 (Me.1996); *State v. DuPaul,* 527 N.W.2d 238, 241–42 (N.D.1995). This allocation of the burden of proof properly places the burden on the party that has in its possession the relevant information, and prevents further dilution of the resources of the public de-

fender's office that would result from requiring that office to investigate an applicant's assets. Accordingly, we join those states and the federal courts that allocate the burden of proof to the applicant for public defender services.

While we hold that the district court failed to exercise its discretion in determining eligibility for public defender services, we do not dictate to the district court how to exercise its discretion but remand for further consideration by the district court. *See Davis,* 592 N.W.2d at 459. In that regard, a threshold determination in this case is whether the homestead remains available to be considered part of Schleicher's assets. Further, the court must evaluate Schleicher's post-application transfer of the home to his son for no consideration. The Second Circuit has held that "a defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal." *United States v. Rubinson,* 543 F.2d 951, 964 (2d Cir.1976). In *Rubinson* the Second Circuit found overwhelming evidence to support the district court's finding that Rubinson was financially able to retain counsel where he put assets in the name of other members of his family to conceal them from "creditors, the government and the court." *Id.; see also State v. Harris,* 5 Conn.Cir.Ct. 313, 250 A.2d 719, 721 (1968) ("Of course, a person claiming the benefits of the [public defender] statute cannot conceal his assets and demand the services of a public defender at state expense."); *Williams v. Superior Court,* 226 Cal.App.2d 666, 672, 38 Cal.Rptr. 291 (1964) ("Of course, he cannot hide his assets and demand the help of a public defender at public expense.").

■ Schleicher admitted putting his home in his son's name so that the state could not seize the asset as compen-

sation for his care at a state hospital. In general, a court determining eligibility for public defender services must consider whether transfer of an asset is voidable as a fraudulent conveyance. *See* Minn.Stat. § 513.44 (2000) (defining fraudulent transfer with respect to present and future creditors); Minn.Stat. § 513.47(a)(1) (2000) (providing for avoidance of the transfer as a remedy of a creditor). If a homestead is to be considered an asset of the defendant for purposes of determining public defender eligibility, the court must be attuned to transfers of homestead property for little or no consideration in an attempt or with the effect of establishing public defender eligibility. We note that the Kansas State Board of Indigents' Defense Services has adopted a rule that specifies that the value of any property transferred after the date of the commission of the alleged offense shall be included in the defendant's liquid assets. Kan. Admin. Regs. 105–4–2(2). Likewise, we believe that eligibility for public defender services in Minnesota should include consideration of the value of homestead property transferred after the date of the offense.

■ If the district court determines in this case that the homestead is properly considered Schleicher's asset, the court must also exercise its discretion to determine whether the property is liquid or whether liquidation of the asset would pose too great a hardship. Ownership of real property does not automatically disqualify a defendant for court-appointed counsel. *See, e.g. United States v. Cohen,* 419 F.2d 1124, 1127 (8th Cir.1969) (requiring "full and adequate inquiry" into landowner's ability to afford counsel). Real property can often be converted into liquid assets or serve as security for an obligation, but some property is highly mortgaged and therefore the owner may not have sufficient available equity to compensate an

attorney. Moreover, in some situations a court may conclude that liquidating real property imposes too great a hardship on the defendant's spouse and dependents. *See, e.g.,* Kan. Admin. Regs. 105–4–2(1) (considering as liquid asset only homesteads having a net value greater than $50,000). That, however, will be a case-by-case determination for the district court in the first instance.

In sum, the district court must exercise its discretion to determine whether Schleicher has met his burden of establishing that through any combination of liquid assets and current income he would be unable to pay the reasonable costs charged by private counsel for defense of a case of this nature. Minn. R.Crim. P. 5.02, subd. 3. That inquiry requires the court to consider the value of the home despite the transfer for no consideration to Schleicher's son, and also requires the court to consider whether the value of the home can be converted to a liquid asset and whether converting the home into a liquid asset would result in a hardship on others. We remand to the district court for this inquiry.

Reversed and writ of mandamus issued.