# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. ROBERT MILLER

**Appeal from the Circuit Court for Madison County**
**No. 01-495     Roger A. Page, Judge**

---

### No. W2002-00640-CCA-R3-CD  - Filed March 28, 2003

---

The defendant, Robert Miller, who represented himself at trial, was convicted of vandalism over $500 and criminal trespass. After the trial, the defendant was appointed counsel. The trial court ordered concurrent sentences of two years and thirty days, respectively, with all but ten days suspended, to be served in community corrections. In this appeal of right, the defendant asserts (1) that he did not knowingly and voluntarily waive his right to counsel; (2) that the trial court erred by the omission of a jury instruction; and (3) that the evidence was insufficient. Because the defendant was denied the assistance of counsel at trial, the judgments of conviction are reversed and the causes are remanded for a new trial.

### Tenn. R. App. P. 3; Judgments of the Trial Court Reversed

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

George Morton Googe, District Public Defender (on appeal), and David H. Crichton, Assistant District Public Defender (on appeal and at sentencing), for the appellant, Roger Miller.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At approximately 7:00 p.m. on October 9, 2000, the victim, Joe Miller, returned to his Jackson residence to find that a Ford Escort automobile registered in the name of his wife, Gerry, had been vandalized. The windshield was shattered, there were four flat tires with inch-wide punctures, and the hood and front bumper had been scratched. At trial, the victim, who is the defendant's brother, testified that he had notified the defendant two days earlier that he and his wife could no longer provide part-time care for the defendant's daughter. The brothers talked again on

Sunday and the offense occurred on Monday, about two hours after the victim informed the defendant that his wife would not reconsider her decision.

When confronted by the victim, the defendant denied any responsibility for the car damage but did say, "Your wife owed me. And when somebody owed me, I'm going to get what somebody owed me one way or another." According to the victim, the defendant also remarked, "Well, what's done is done. I can't undo it. When you mess with my little girl, you're messing with me." The victim testified that his garage door had been closed and locked but claimed that the defendant could have opened it without causing damage. The victim asserted that he had previously given the defendant keys to the house and garage.

Gerry Miller testified that she and her husband left their residence at approximately 6:15 p.m. on the date of the crime. She planned to attend a church program with a friend and her husband went to a hardware store accompanied by their son. Ms. Miller claimed that on the way to church, she saw the defendant stopped at a red light near her residence. She explained that she had initially agreed to care for the defendant's child because the defendant, who was in the process of a divorce, was working third shift. She testified that she changed her mind after the defendant and his wife reconciled. Ms. Miller acknowledged that she and the defendant had previously been close friends and that she had never seen the defendant behave violently toward anyone. She testified that the cost of repairs for the automobile exceeded $1,200.00.

The defendant, who did not have an attorney at trial, denied that he had damaged the vehicle. He contended that Ms. Miller was angry because "she had a problem with the fact that I was seeing another woman."

I

Initially, the defendant argues that his waiver of counsel at trial was involuntary because it was based on his inability to afford counsel and that the trial court had failed to make a proper determination of his indigency pursuant to Tennessee Code Annotated section 40-14-202. The state asserts that the record supports the trial court's determination that the defendant was not indigent. The findings of a trial judge who presided at a hearing where he saw and heard the witnesses testify and heard and considered conflicting testimony will be given the weight of a jury verdict. His findings will not be disturbed on appeal unless the evidence preponderates otherwise. State v. Pritchett, 621 S.W.2d 127, 129 (Tenn. 1991); State v. O'Guinn, 709 S.W.2d 561 , 565-566 (Tenn. 1986); Ryan v. State, 97 Tenn. 206, 36 S.W. 930, 931 (1896).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend VI. Likewise, Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel." Tenn. Const. art. I, § 9. A defendant has the right to counsel at all "'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" Maine v. Moulton, 474 U.S. 159, 170 (1985) (quoting United States v. Wade, 388 U.S.

218, 224 (1967)). Where a defendant is financially unable to obtain representation, counsel must be provided by the state. Gideon v. Wainwright, 372 U.S. 335, 343 (1963).

An "indigent person" is "any person who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney." Tenn. Code Ann. § 40-14-201(1). Tennessee Code Annotated section 40-14-202, which governs court appointment of counsel for indigent defendants, provides in pertinent part as follows:

> (a) In all felony cases, if the accused is not represented by counsel, and the court determines by the manner provided in subsection (b) that the accused is an indigent person who has not competently waived the right to counsel, the court shall appoint to represent the accused either the public defender, if there is one for the county, or, in the absence of a public defender, a competent attorney licensed in this state. The court may call upon any legal aid agency operating in conjunction with an accredited college of law to recommend attorneys for appointment under the provisions of this part. The court may, upon its own motion or upon application of counsel appointed under this section, name additional attorneys to aid and assist in the defense. Each appointment of counsel shall be denoted by an appropriate entry upon the minutes of the court, which shall state the name of counsel and the date of counsel's appointment, but failure of the court to make such a minute entry shall not in any way invalidate the proceeding if an attorney was in fact appointed. Upon the appointment of an attorney hereunder, no further proceeding shall be had until the attorney so appointed has had sufficient opportunity to prepare the case. If the court should determine that the accused is not an indigent person, the court shall then advise the accused with respect to the accused's right to counsel and afford the accused an opportunity to acquire counsel.

> (b) Whenever an accused informs the court that such accused is financially unable to obtain the assistance of counsel, it is the duty of the court to conduct a full and complete hearing as to the financial ability of the accused to obtain the assistance of counsel, and, thereafter, make a finding as to the indigency of the accused. All statements made by the accused seeking the appointment of counsel shall be by sworn testimony in open court or written affidavit sworn to before the judge.

> (c) When making a finding as to the indigency of an accused, the court shall take into consideration:

> (1) The nature of the services to be rendered;
> (2) The usual and customary charges of an attorney in the community for rendering like or similar services;
> (3) The income of the accused regardless of source;
> (4) The poverty level income guidelines compiled and published by the United States department of labor;

(5) The ownership or equity in any real or personal property;

(6) The amount of the appearance or appeal bond, whether the party has been able to obtain release by making such bond, and, if the party obtained release by making such bond, the amount of money paid and the source of such money; and

(7) Any other circumstances presented to the court which are relevant to the issue of indigency.

(d) If a social service agency services the criminal justice system of the judicial district, and the court has reasonable cause to believe the accused has the financial resources to employ counsel, the court shall order the agency to conduct an investigation into the financial affairs of the accused and report its findings directly to the court. The court shall consider the contents of the agency's report in making its determination, and the report shall be made a part of the record in the cause.

(e) If the court appoints counsel to represent an accused in a felony case under this section or in a misdemeanor case as required by law, but finds the accused is financially able to defray a portion or all of the cost of the accused's representation, the court shall enter an order directing the party to pay into the registry of the clerk of such court such sum as the court determines the accused is able to pay. Such sum shall be subject to execution as any other judgment and may also be made a condition of a discharge from probation. The court may provide for payments to be made at intervals, which the court shall establish, and upon such terms and conditions as are fair and just. The court may also modify its order when there has been a change in circumstances of the accused.

Tenn. Code Ann. § 40-14-202(a) – (e) (emphasis added). This court has previously interpreted the statute's hearing requirement as mandatory:

We think it is clear from the plain meaning of the statute that an indigency hearing must be held whenever a criminal defendant claims that he is financially unable to retain counsel. Furthermore, the legislature has placed no limits on the word "whenever." Thus, an indigency hearing is required at any point that the defendant claims indigency.

State v. Dubrock, 649 S.W.2d 602 (Tenn. Crim. App. 1983) (holding that the defendant was entitled to indigency hearing even though a third party had retained private counsel on his behalf).

In this case, the defendant first appeared before the trial court at the arraignment on June 11, 2001. On that date, he informed the trial court that he could not afford an attorney and completed an affidavit of indigency indicating that he was employed at Quebecor World where he earned $240 per week. The affidavit included information that the defendant received food stamps and had two dependent children. It listed assets in the form of a house valued at $63,000 subject to a mortgage in that same amount. A minivan was valued at $2,500. The affidavit also indicated that the

4

defendant owned furniture valued at $800 for which he owed $720. The $5,000 bail had been posted by his mother. After the trial court reviewed the affidavit and expressed doubt that the defendant qualified as indigent, the defendant stated that he had filed for bankruptcy under Chapter 13 and was making reorganization plan payments of $60 per week. He also stated that he paid $100 per week in child support for one of his children and daycare expenses for the other. The trial court concluded that the defendant could afford an attorney and should sell his vehicle for the fee. The defendant was given one month to employ counsel.

Approximately six weeks later, the defendant again appeared in the trial court, contending that he had attempted to hire counsel but was unable to do so for $2,500, the value of his minivan. He had completed a second affidavit of indigency, this time indicating that he was employed at Color World, earning $185 per week. The trial court appointed the public defender and ordered that the defendant pay $1,000 in fees to that office, stating that the defendant was not entitled to free counsel because he was working and had "minimal assets." One month later, the defendant again appeared before the trial court. At that time, the defendant's appointed counsel informed the trial judge that the defendant had telephoned his office, saying that he "didn't need [the public defender's] services anymore." When questioned by the trial judge, the defendant stated that he intended to represent himself. At a hearing two weeks later, the trial court determined that the defendant was competent to act as his own counsel.

In State v. Gardner, 626 S.W.2d 721 (Tenn. Crim. App. 1981), the trial court found that the defendant was not indigent and relieved appointed counsel after the defendant's father attempted to post a cash bond for his son's release. On appeal, this court reversed the trial court's judgment and ordered the reinstatement of appointed counsel, finding that the financial condition of the defendant's father was irrelevant and that the evidence did not support the trial court's determination that the defendant was not indigent. The court observed as follows:

> It is not necessary that one be a "pauper" in order to be "indigent" for purposes of having appointed counsel in a criminal case. Rather, when one lacks the financial resources which would allow him to retain a competent criminal lawyer at the particular time he needs one, he is entitled to appointed counsel. Anaya v. Baker, 427 F.2d 73, 75 (10th Cir. 1970).

> Indigency in the sense of ability to employ competent counsel is not necessarily equatable with "destitution". The judge need only be satisfied that representation essential to an adequate defense is beyond the means of the defendant. United States v. Cohen, 419 F.2d 1124, 1127 (8th Cir. 1969). Indigency is a relative concept, and must be defined with reference to the particular right asserted. State ex rel. Riendeau v. Tahash, 276 Minn. 26, 148 N.W.2d 557, 559-560 (1967). One able to employ counsel to defend a minor misdemeanor charge may be unable to afford counsel to defend a serious felony charge. State v. Harris, 5 Conn. Cir. 313, 250 A.2d 719, 721 (1968).

5

626 S.W.2d at 725.

In State v. Dale Gray, No. 87-304-III (Tenn. Crim. App., at Nashville, Dec. 15, 1988), the trial court appointed counsel to represent the defendant on the date he appeared for arraignment. When the defendant appeared, however, he reported that his appointed counsel had determined that he was not indigent and had advised him that he could sell his house, in which he had $20,000 in equity, to pay for counsel. The court agreed that the defendant was not indigent and set the case for trial, at which the defendant represented himself and was convicted of receiving stolen property under the value of $200. On appeal, this court reversed the conviction, finding that the "trial court committed error of prejudicial dimensions in failing to make a more thorough inquiry into the financial status of the defendant." No. 87-304-III, slip op. at 8.

In our view, the holdings in Gardner and Gray require a similar result in this case. Although the trial court considered the defendant's claim of indigency, there was not a "full and complete" indigency hearing within the meaning of Tennessee Code Annotated section 40-14-202. See also State v. Stephen John Abbott, No. 01C01-9607-CC-00293 (Tenn. Crim. App., at Nashville, July 24, 1996) (holding that indigent defendant was entitled to appointed counsel even though a third party had retained counsel on behalf of the defendant). The statute makes it mandatory that a trial court consider the nature of the services to be rendered; the usual and customary charges of an attorney in the community for rendering like services; the income of the defendant regardless of source; the poverty level income guidelines compiled and published by the United States Department of Labor; the ownership or equity in any real or personal property; the amount of the appearance or appeal bond, whether the defendant has been able to obtain release by making such bond, and, if so, the amount and source of any money paid; and any other relevant circumstances. Tenn. Code Ann. § 40-14-202(c). Here, however, the trial court considered only the affidavits of indigency.

Our review of the record in light of the relevant statutory factors suggests that the defendant did, in fact, qualify as an "indigent person" and was, therefore, entitled to the appointment of counsel without any corresponding duty to pay. When he appeared for arraignment, his monthly income was $960 and he qualified for government assistance in the form of food stamps. He reported child support payments in the amount of $400 per month and Chapter 13 bankruptcy reorganization plan payments in the amount of $240 per month, two-thirds of his income. Additionally, the defendant had legal custody of his daughter, for whom he had some daycare expenses. The record also indicates that the defendant had been making payments to his brother and sister-in-law for clothing and other items they had purchased for his daughter. Although he likely had other, non-fixed expenses, the record contains no further information. When the defendant appeared before the court a second time, his employment had changed and his income had decreased by $220 per month to $740 and his expenses were the same. Although the defendant owned a house, the record demonstrates he had no equity. Because a bankruptcy reorganization plan was still in effect, it is unlikely that he could have sold either the house or the minivan without permission of the bankruptcy court. By our calculations, the defendant would have fallen well below the 2001 poverty guidelines. See 2001 HHS Poverty Guidelines, 66 Fed. Reg. 10695 – 10697 (Feb. 16, 2001).

In our view, the trial court's failure to appoint counsel qualifies as an error of "prejudicial dimensions." See Dale Gray, No. 87-304-III, slip op. at 8. The defendant was charged with two felonies, burglary and vandalism over $500. He was convicted of the vandalism as charged and the conviction for criminal trespass, a misdemeanor, was a lesser included offense of the burglary charge. Further, prior to sentencing, the defendant completed another affidavit of indigency, this time showing no income. Under these circumstances, the defendant should have been appointed counsel. See Alabama v. Shelton, 535 U.S. 654 (2002) (affirming reversal of misdemeanor conviction and suspended sentence where counsel was not provided to indigent defendant and conviction could have led to "imprisonment even for a brief period"); Gideon, 372 U.S. at 343-45; State v. Garrison, 40 S.W.3d 426, 433 n.9 (2000) (noting that complete denial of the assistance of counsel "def[ies] harmless error analysis and require[s] reversal"); cf. Tenn. Sup. Ct. R. 13 § 1(j) (providing that a trial court's failure to follow the procedural provisions relative to appointment of indigent counsel shall not constitute grounds for relief from conviction); State v. Earley Story, No. W2001-00529-CCA-R3-CD (Tenn. Crim. App., at Jackson, Sept. 13, 2002) (applying Rule 13 where defendant's sole complaint was that trial court failed to conduct indigency hearing prior to appointing counsel).

In Dubrock, Judge Martha Craig Daughtrey, writing for this court, concluded that "the only circumstances under which [a] defendant could constitutionally be put to trial without an attorney would be pursuant to a valid waiver of his right to counsel." 649 S.W.2d at 605. This record supports the defendant's contention that his waiver of counsel was neither knowing nor voluntary. A waiver of the assistance of counsel "must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the back-ground, experience and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482 (1981); see also Johnson v. Zerbst, 304 U.S. 458, 465 (1938); State v. Burkhart, 541 S.W.2d 365, 368 (Tenn. 1976); State v. Coleman, 519 S.W.2d 581, 583 (Tenn. 1975). "When an accused cannot afford an attorney, however, it is obvious that his failure to hire a lawyer cannot be regarded as a waiver of the right to counsel." Dubrock, 649 S.W.2d at 606; see Tobin v. United States, 402 F.2d 307, 308 (7th Cir. 1968).

Here, the defendant consistently maintained that he desired counsel but was unable to afford the fee. At the hearing to determine his competency to represent himself, the trial court did a thorough job of advising the defendant of his rights and ensuring that he understood them. The defendant explained that he was exercising his right of self-representation only because he could not pay the public defender's fees. Under our law, this does not qualify as a "knowing and intelligent relinquishment or abandonment" of the right to counsel. Because the trial court failed to conduct a "full and complete" hearing on the defendant's claim of indigency and the evidence presented appears to have established that the defendant was an "indigent person," the waiver of the right to counsel would not qualify as voluntary. See Dwayne Murrell v. State, No. 302 (Tenn. Crim. App., at Knoxville, Aug. 15, 1990) (holding that the trial court committed reversible error by failing to conduct an indigency hearing and allowing the defendant to proceed pro se after the defendant had requested appointment of counsel).

7

## II

Next, the defendant contends that the trial court erred by failing to instruct the jury on express statements against interest. The state argues that the defendant has waived this issue by failing to request the instruction or object at trial to the jury instructions provided. See Tenn. R. Crim. P. 30(a)(b); see also State v. Cravens, 764 S.W.2d 754, 756-57 (Tenn. 1989). In the alternative, the state asserts that an instruction on statements against interest was not necessary given the evidence in the case.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

While the defendant may request special instructions, the jury charge provided by the trial judge is sufficient where it adequately states the law. See, e.g., State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980). When a trial court's charge to the jury is accurate and complete, the court need not give additional special instructions requested by the defendant. See State v. Story, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980).

The defendant asserts that the trial court should have provided the jury with the charge contained in Tennessee Criminal Pattern Instruction 42.11, which provides as follows:

> Evidence of an admission has been introduced in this case. An admission is an acknowledgment by the defendant of certain facts which tend, together with other facts, to establish [his] [her] guilt. It must be corroborated by other independent evidence to warrant and support a conviction.

> The court has permitted admission of this evidence, but it remains your duty to decide if in fact such statement was ever made. If you do not believe it was ever made, you should not consider it. If you decide the statement was made, you must then judge the truth of the facts stated. In determining whether the statement is true, you should consider the circumstances under which it was made. You should also consider whether any of the other evidence before you tends to contradict the statement in whole or in part. You should not arbitrarily disregard any part of the statement, but should consider all of the statement you believe is true.

8

If you find the statement is true, you are the sole judge of the weight that should be given it. You should consider it along with all the other evidence in the case in determining the defendant's guilt or innocence.

T.P.I. – Crim. 42.11.

In this case, Joe Miller testified that the defendant, in a telephone conversation shortly after the crimes, stated, "Your wife owed me. And when somebody owed me, I'm going to get what somebody owed me one way or another." The defendant also allegedly told Joe Miller that "what's done is done. I can't undo it. When you mess with my little girl, you're messing with me." The defendant categorically denied making the statements. The trial court instructed the jury that it had the responsibility of assigning credibility of the witnesses and reconciling conflicts in the proof. In addition, the trial court emphasized that a guilty verdict could not be supported solely by the fact that the defendant had made statements implying his guilt. In our view, the pattern jury instruction would have been preferable. Nevertheless, the trial court adequately covered the substance of the pattern charge on admissions against interest. In consequence, the trial court did not err by failing to give such an instruction. See State v. Zirkle, 910 S.W.2d 874, 892 (Tenn. Crim. App. 1995) (holding that the trial court's failure to provide a requested instruction was not error where the substance of the requested instruction was covered by the general charge).

III

Finally, the defendant contends that the evidence was insufficient to support his convictions. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 456-58 (1958); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983). The facts and circumstances must "be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). The weight of the circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn.

Crim. App. 1974) (citing <u>Patterson v. State</u>, 4 Tenn. Crim. App. 657, 475 S.W.2d 201 (1971)). The same standard of review for sufficiency claims is applicable to guilt based upon direct as well as circumstantial evidence. <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 208 Tenn. 75, 343 S.W.2d 895, 897 (1971). The court may not substitute its inferences for those drawn by the trier of fact in circumstantial evidence cases. <u>Liakas</u>, 286 S.W.2d at 859; <u>Farmer v. State</u>, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978).

"A person commits criminal trespass who, knowing the person does not have the owner's effective consent to do so, enters or remains on property, or a portion thereof." Tenn. Code Ann. § 39-14-405(a). A person is guilty of vandalism when he "knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408(a).

Taken in the light most favorable to the state, the evidence at trial showed that someone broke into the victims' locked garage and damaged their Ford Escort automobile, shattering the windshield and flattening the tires. Gerry Miller testified that repair of the damage exceeded $1,200. The defendant, who had argued with the victims just hours earlier, was seen in the vicinity of the victims' home at the time the offenses were committed. He had keys to the victims' garage door. There were no signs of a forcible entry. When confronted by Joe Miller, the defendant made statements implicating his involvement. Although much of the evidence was circumstantial, it would have been sufficient to support the convictions.

Because the defendant should have been appointed counsel at trial, the judgments of the trial court are reversed and the cause is remanded for a new trial on the charges of criminal trespass and vandalism in excess of $500.

_____
GARY R. WADE, PRESIDING JUDGE

10